**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**JESUS LINARES,**

                       **Plaintiff,**                  **REPORT AND**
                                                      **RECOMMENDATION**

               **-against-**                             **08-CV-3243 (RRM)**

**LARRY RICHARDS, et al.,**

                       **Defendants.**
-------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      On August 11, 2008, following the breakdown of a business venture between plaintiff Jesus Linares ("plaintiff") and defendant Stage C Partners, Inc. ("Stage C"), plaintiff commenced this diversity action against Stage C and its officer and director, Larry Richards ("Richards"), in his individual and official capacities, alleging breach of contract, unjust enrichment, conversion, and fraudulent inducement. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiff's First Amended Complaint in its entirety as against Richards, and all claims other than breach of contract as against Stage C. On March 25, 2009, the Honorable Roslynn R. Mauskopf referred the motion to the undersigned magistrate judge for a Report and Recommendation.

      For the reasons that follow, this Court respectfully recommends that defendants' motion to dismiss be denied in part and granted in part without prejudice, and that plaintiff be allowed to file a Second Amended Complaint to cure the deficiencies identified in this opinion.

## BACKGROUND

The facts giving rise to this lawsuit, as drawn from the First Amended Complaint, can be summarized as follows: In October 2006, plaintiff and Stage C entered into a Binding Letter of Intent ("LOI") concerning the formation of an entity to be known as the Hispanic Financial Network ("HFN"), which the parties intended would provide competitively priced financial services to the Hispanic community. See First Amended Complaint ("Am. Compl."), ECF Docket Entry ("D.E.") # 12, ¶ 7. Richards executed the LOI in his capacity as Chief Executive Officer ("CEO") of Stage C. See id.

Pursuant to the LOI, plaintiff agreed to invest $300,000.00 with Stage C in connection with the formation of HFN: $150,000.00 upon signing, and an additional $150,000.00 within three weeks of the signature date. See id. ¶ 8. Under the terms of the LOI, plaintiff retained the right to withdraw the investment, without penalty, after the expiration of a 90-day period.[1] See id. ¶ 9.

Plaintiff invested a total of $350,000.00 with Stage C: $150,000.00 on September 22, 2006, and $200,000.00 on December 21, 2006. See id. ¶ 11. However, on June 6, 2007 – after the 90-day period had expired – plaintiff notified Richards and Stage C that he had decided to withdraw his investment, and demanded that the entire investment be refunded. See id. ¶ 12. Stage C, acting through Richards, refused to do so. See id. ¶ 13. This action followed on August 11, 2008.

---

[1] According to the First Amended Complaint, "[t]he '90-Day period' [is] a reference to a '90-Day Activity List and Timeline' referenced elsewhere in the LOI." Am. Compl. ¶ 10.

**DISCUSSION**

The First Amended Complaint, filed on October 24, 2008, charges defendants with breach of contract, unjust enrichment, conversion, and fraudulent inducement. See id. ¶¶ 14-47. Defendants contend in the instant motion that the First Amended Complaint fails to state a claim upon which relief can be granted as against Richards, and adequately pleads only a claim for breach of contract as against Stage C.

**I. Standard of Review**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although "a formulaic recitation of the elements of a cause of action will not do," see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted), a complaint is sufficient, under Rule 8(a)(2), so long as it "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (second alteration in original).

Rule 12(b) permits a party, prior to filing a responsive pleading, to assert certain defenses by motion, including the defense that the party seeking relief has failed to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, the Court must "accept as true all material facts alleged in the plaintiff's complaint and draw all reasonable inferences in his favor." McEvoy v. Spencer, 124 F.3d 92, 95 (2d Cir. 1997) (citing Hill v. City of New York, 45 F.3d 653, 657 (2d Cir. 1995)).

"Dismissal is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Still v. DeBuono, 101 F.3d 888, 891 (2d Cir. 1996) (internal quotation marks and citation omitted).

The Supreme Court has recently clarified the judge's role in reviewing challenges to the sufficiency of a complaint: "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950 (citing Twombly, 550 U.S. at 556). Accordingly,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

## II. First Cause of Action: Richards' Personal Liability for Breach of Contract

Defendants admit that plaintiff has adequately pleaded a cause of action for breach of contract as against Stage C. See Defs. Mem. Supp. Mot. Dismiss ("Defs. Supp. Mem."), D.E. # 14-1, at 4, 9. Richards, however, disputes that plaintiff has pleaded facts sufficient to pierce Stage C's corporate veil to hold Richards personally liable for breaching the LOI. See id. at 8-9. This Court agrees that the claim in one respect is not well-pleaded, but concludes that plaintiff should be afforded the opportunity to cure that deficiency.

Under New York choice-of-law rules,[2] the law of the state of incorporation is used to determine whether the corporate veil should be pierced. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (citation omitted). Accordingly, because Stage C is a New Jersey corporation, see Am. Compl. ¶ 3, New Jersey law governs the veil-piercing question.

It is a fundamental proposition under New Jersey law that a corporation is a separate entity from its shareholders (or, in the case of a wholly owned subsidiary, its corporate parent). See N.J. Dep't of Envtl. Prot. v. Ventron Corp., 468 A.2d 150, 164 (N.J. 1983) (citation omitted). Nevertheless, "courts may pierce the corporate veil by finding that a subsidiary was a mere instrumentality of the parent corporation." Id. (internal quotation marks and citation omitted). That finding depends upon the application of a two-pronged test: In order to state a claim for piercing the corporate veil under New Jersey law, a plaintiff must show that "(1) 'the parent corporation so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent' and (2) 'the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.'" Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145, 149 (3d Cir.

---

[2] A federal district court sitting in diversity applies the substantive law of the forum state, including that state's choice-of-law rules. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1538-39 (2d Cir. 1997). Aside from the veil-piercing question, the parties apparently agree that New York substantive law governs the claims in this case. Accordingly, the parties' election shall govern all aspects of this motion other than the veil-piercing question. See Lewis Tree Serv., Inc. v. Lucent Techs., Inc., 211 F.R.D. 228, 235-36 (S.D.N.Y. 2002) (citing 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999); Estate of Hogarth v. Edgar Rice Burroughs, Inc., No. 00-Civ.-9569 (DLC), 2002 WL 398696, at *28 (S.D.N.Y. Mar. 15, 2002); Kosower v. Gutowitz, No. 00-Civ.-9011, 2001 WL 1488440 (JGK), at *4 n.1 (S.D.N.Y. Nov. 21, 2001)).

1988) (quoting Ventron, 468 A.2d at 164). This test also applies where, as here, a natural person or a corporate officer is alleged to be the dominating "entity." See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.9 (3d Cir. 2002) (citations omitted); N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc., 800 F.Supp. 1210, 1219-20 & n.9 (D.N.J. 1992).

"In determining corporate dominance, courts engage in a fact-specific inquiry considering whether the subsidiary was grossly undercapitalized, the day-to-day involvement of the parent's directors, officers and personnel, and whether the subsidiary fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade." Verni *ex rel.* Burstein v. Harry M. Stevens, Inc., 903 A.2d 475, 498-99 (N.J. Super. Ct. App. Div. 2006) (collecting cases). With respect to the second prong of the veil-piercing test – whether the corporate form has been abused to perpetrate a fraud or injustice – "the hallmarks . . . are typically the engagement of the subsidiary in no independent business of its own but exclusively the performance of a service for the parent and, even more importantly, the undercapitalization of the subsidiary rendering it judgment-proof." OTR Assocs. v. IBC Servs., Inc., 801 A.2d 407, 409-10 (N.J. Super. Ct. App. Div. 2002) (citing Ventron, 468 A.2d at 164-65). In this connection, "a plaintiff need not prove common law fraud but instead [must] demonstrate that the defendants, via the corporate form, perpetrated a fraud, injustice, or the like, a less exacting standard." State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC, No. 3:08-cv-3619 (FLW), 2009 WL 114160, at *6 (D.N.J. Jan. 15, 2009)

(internal quotation marks and citation omitted).

The facts alleged in plaintiff's First Amended Complaint, if proven, suffice to show that Stage C was so dominated by Richards that the company was merely a conduit for him. See Am. Compl. ¶¶ 19-20. Specifically, plaintiff has alleged that, at the time the LOI was executed, (1) Richards was the CEO and dominant shareholder of Stage C; (2) Stage C was grossly undercapitalized; (3) Richards siphoned funds from Stage C; and (4) Richards failed to maintain adequate records or adhere to corporate formalities in his capacity as officer and director of Stage C. See id. ¶¶ 4, 7, 19-20. As an example of the latter, plaintiff alleges that Stage C failed to file an annual report with the New Jersey Department of State for two consecutive years, leading to the revocation of Stage C's corporate charter in February 2007, see id. ¶ 20, shortly after plaintiff's payment of $200,000.00 to Stage C in December 2006. See id. ¶ 11. Accepting these facts as true and drawing all reasonable inferences in plaintiff's favor, these facts, if proven, suffice to show that Stage C was nothing more than Richards' alter ego. See Verni, 903 A.2d at 498-99.

With respect to Richards' abuse of Stage C's corporate form, plaintiff alleges, in conclusory fashion, that "Richards used Stage C to perpetrate a fraud or injustice or to otherwise circumvent the law." Id. ¶ 21.[3] This is precisely the type of threadbare, legal

---

[3] In his opposition papers, plaintiff appears to consider his fraudulent inducement claim as having been adopted by reference in his breach of contract claim. See Pl. Mem. Opp. Mot. Dismiss ("Pl. Mem. Opp."), D.E. # 14-6, at 9. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, however, adoption by reference must be explicit; absent an explicit reference, the Court is "barred from considering plaintiff's unincorporated factual allegations made in
(continued…)

conclusion the Supreme Court has cautioned courts to disregard in considering whether allegations in a complaint plausibly give rise to an entitlement to relief. See Iqbal, 129 S.Ct. at 1949-50. Plaintiff has therefore failed to set forth facts that would entitle him to pierce Stage C's corporate veil and hold Richards liable for breach of contract.

Accordingly, this Court respectfully recommends that defendants' motion to dismiss Count I, breach of contract, be granted without prejudice as against Richards and, for the reasons stated *infra* Part V, that plaintiff be granted leave to further amend his complaint.

**III. Second and Third Causes of Action: Unjust Enrichment and Conversion**

Defendants contend that plaintiff is precluded from advancing unjust enrichment and conversion as theories of relief where breach of contract is also alleged.[4] In this connection,

---

[3](…continued)
subsequent counts as a basis for his [breach of contract] claim in count I." Marvullo v. Gruner & Jahr, 105 F.Supp.2d 225, 229 n.4 (S.D.N.Y. 2000) (citing Arce v. Walker, 139 F.3d 329, 336 n.7 (2d Cir. 1998); Jones Apparel Group, Inc. v. Piccone, No. 94-Civ.-754 (LMM), 1994 WL 260767, at *3 (S.D.N.Y. June 8, 1994); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1326, at 759-60 (2d ed. 1990)). See also United States v. Int'l Longshoremen's Ass'n, 518 F.Supp.2d 422, 461-62 (E.D.N.Y. 2007) (refusing to incorporate facts contained in exhibits to amended complaint absent the "'direct and explicit' notice necessary to incorporate extraneous matter by reference.").

[4] Defendants rely solely on the argument that plaintiff cannot advance unjust enrichment and conversion as theories of liability where breach of contract is alleged; defendants do not argue that plaintiff's First Amended Complaint fails to plead facts sufficient to state those causes of action. Nevertheless, the Court has reviewed plaintiff's claims to determine whether they contain facts sufficient to state causes of action sounding in unjust enrichment and conversion, and concludes that they do. See Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 403-04 (2d Cir. 2006) (setting forth the elements of conversion under New York law); Beth Israel Med. Ctr. v. Blue Cross & Blue Shield of N.J., 448 F.3d 573, 586-87 (2d Cir. 2006) (setting forth the elements of unjust enrichment under New York law).

defendants maintain that, in considering their challenge to plaintiff's claims for unjust enrichment and conversion, the Court must "proceed as if a valid contract exists between the parties." Def. Mem. Reply Mot. Dismiss ("Def. Reply Mem."), D.E. # 14-2, at 9 (citing Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)).[5]

Defendants' argument is without merit. To be sure, under New York law, plaintiff may not *recover* for unjust enrichment or conversion if a valid contract is found to exist. See Fraser v. Doubleday & Co., 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984); Goldstein v. CIBC World Mkts. Corp., 776 N.Y.S.2d 12, 14 (1st Dep't 2004). Nevertheless, defendants' suggestion that plaintiff may not assert such claims where he also alleges breach of contract is in direct conflict with the Federal Rules of Civil Procedure. The plain language of Rule 8(d) permits the pleading of inconsistent claims. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). And although this Court must accept plaintiff's factual allegations concerning his claim for breach of contract as true for the purposes of determining whether plaintiff has adequately pleaded that cause of action, see McEvoy, 124 F.3d at 95, the Court need not and, indeed, cannot determine at this stage of the litigation whether a valid contract exists.[6]

---

[5] Defendants' citation to Jaghory is perplexing. In that case – a civil rights case involving a challenge to the residency requirements in New York's medical licensing regulations – no claim for breach of contract was advanced. See Jaghory, 131 F.3d at 327-29. Even a cursory review of Jaghory reveals that it has absolutely no relevance to this case.

[6] Although the Court in its discretion could consider the LOI in connection with the instant motion, as it is integral to the complaint, see Subaru Distribs. Corp. v. Subaru of Am., Inc.,

(continued…)

In keeping with Rule 8(d), courts construing New York law permit pleadings containing claims for both breach of contract and unjust enrichment where a determination as to whether a valid contract exists has not been made or the validity of the contract is disputed. See Labajo v. Best Buy Stores, L.P., 478 F.Supp.2d 523, 531 (S.D.N.Y. 2007) (collecting cases); ESI, Inc. v. Coastal Power Prod. Co., 995 F.Supp. 419, 436 (S.D.N.Y. 1998); Indep. Energy Corp. v. Trigen Energy Corp., 944 F.Supp. 1184, 1200 (S.D.N.Y. 1996); see also Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996) (claims for quantum meruit and unjust enrichment "were properly pleaded . . . in the alternative to the contractual claim"). That principle applies with equal force to circumstances where, as here, an individual defendant disputes that he is individually bound by a contract. See Space, Inc. v. Simowitz, No. 08-Civ.-2854 (SAS), 2008 WL 2676359, at *5 (S.D.N.Y. July 8, 2008) (citing Sofi Classic S.A. de C.V. v. Hurowitz, 444 F.Supp.2d 231, 249 (S.D.N.Y. 2006)). Courts have likewise refused to dismiss claims for conversion on the theory that pleading breach of contract bars pleading conversion as an alternative theory of recovery. See Nat'l City Commercial Capital Co. v. Global Golf, Inc., No. 09-CV-307 (JFB) (AKT), 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009); Fantozzi v. Axsys Techs., Inc., No. 07-Civ.-2667 (LMM), 2007 WL 2454109, at *3 (S.D.N.Y. Aug. 20, 2007). And because conversion is a

---

[6](…continued)
425 F.3d 119, 122 (2d Cir. 2005), the LOI was not attached to either the Complaint or the First Amended Complaint. Defendants cite to the LOI, see Def. Reply Mem. at 6, but have failed to submit it in connection with this motion. In any event, because defendants have not conceded the validity of the LOI, the Court concludes that the decisionmaking process would not be significantly aided by consideration of that document.

tort, a corporate officer can be held individually liable under that theory of liability, even if that officer acted within the scope of his employment. See LoPresti v. Terwilliger, 126 F.3d 34, 42 (2d Cir. 1997).

Here, Stage C has refused to concede the validity of the LOI, see Def. Reply Mem. at 9; Def. Supp. Mem. at 9; Tr. of Tel. Conf. (Oct. 6, 2008) ("Tr.") at 9;[7] and Richards has moved to dismiss the First Amended Complaint for failure to state a claim for breach of contract as against him. See Def. Reply Mem. at 7-9; Def. Supp. Mem. at 8-9. It may well be that plaintiff's breach of contract claim will ultimately preclude him from recovering for unjust enrichment and conversion. See Fraser, 587 F.Supp. at 1288; Goldstein, 776 N.Y.S.2d at 14.[8] At this stage of the litigation, however, where the validity of the LOI has not been

---

[7] Indeed, at the pre-motion conference before Judge Mauskopf, plaintiff's counsel invited defense counsel to concede the validity of the LOI numerous times. See Tr. at 4, 9, 13. Defense counsel declined to do so.

[8] Defendants rely solely on Fraser and Goldstein in support of their contention that plaintiff's unjust enrichment and conversion claims fail as a matter of law. See Def. Reply Mem. at 9-10; Def. Supp. Mem. at 9-10. The procedural posture of Fraser, which addresses a motion for summary judgment, see Fraser, 587 F.Supp. at 1286, renders that case inapposite here.

The decision in Goldstein apparently assumed, without discussion, that the validity of the contract at issue was not in dispute. In Goldstein, the Appellate Division, reviewing a trial court's dismissal of plaintiff's unjust enrichment claim for failure to state a claim, held that "[a] claim for unjust enrichment, or quasi contract, may not be maintained where a contract exists between the parties covering the same subject matter." Goldstein, 776 N.Y.S.2d at 14 (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987)). The New York Court of Appeals decision relied on by the Appellate Division, however, makes clear that it is impermissible to seek damages under a theory of unjust enrichment only where the validity of a contract is undisputed. See Clark-Fitzpatrick, 70 N.Y.2d at 389 (citations omitted).

established, defendants' motion to dismiss Count II, for unjust enrichment, and Count III, for conversion, should be denied.

**IV. Fourth Cause of Action: Fraudulent Inducement**

As with plaintiff's unjust enrichment and conversion claims, defendants contend that plaintiff is precluded from pleading a claim for fraudulent inducement where breach of contract is alleged. See Def. Supp. Mem. at 7-8. In a newly minted argument, defendants additionally maintain that, even if pleading fraudulent inducement in the alternative were permissible, plaintiff has failed to adequately plead that claim. See Def. Reply Mem. at 4-7. This Court agrees that the fraudulent inducement claim is not well pled, but would allow plaintiff to cure the deficiency.

To establish a fraud claim under New York law, a plaintiff must show that "1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation." Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000) (citing Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)). It is well settled that a corporate officer who commits fraud can be held individually liable, even if that officer acted within the scope of his official duties. See LoPresti, 126 F.3d at 42.

A party pleading fraud "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To plead fraud with particularity, "the complaint must '(1)

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)). "Allegations that are 'conclusory' or 'unsupported by assertions of fact' are insufficient to satisfy Rule 9(b)." OSRecovery, Inc. v. One Groupe Int'l, Inc., 229 F.R.D. 456, 458 (S.D.N.Y. 2005) (quoting and citing Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)). Intent to defraud may be alleged generally. See Fed. R. Civ. P. 9(b).

A cause of action for fraud cannot be maintained where the alleged fraud is indistinct from the alleged breach of contract. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996) (citations omitted). "A claim for fraudulent inducement[,]" however, "is separate and distinct from a claim for breach of contract under New York law, and a plaintiff may plead both causes of action." Rosen v. Spanierman, 894 F.2d 28, 35 (2d Cir. 1990) (collecting cases). To maintain such a claim, a plaintiff must, in addition to showing that a fraud was committed, either "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages[.]" Bridgestone/Firestone, 98 F.3d at 20 (internal quotation marks and citations omitted).

Defendants argue that plaintiff's failure to plead special damages renders his claim for

fraudulent inducement insufficient as a matter of law. See Def. Supp. Mem. at 7-8. As plaintiff correctly observes, however, pleading special damages is just one of three separate and distinct ways to show fraudulent inducement. See Bridgestone/Firestone, 98 F.3d at 20.

Here, plaintiff has alleged that Richards, during meetings in the fall of 2006 and in a letter written at that time, made several misrepresentations collateral or extraneous to the LOI, intending, through those statements, to induce plaintiff into signing that agreement. For example, plaintiff alleges that Richards claimed, among other things, that (1) he and his family had personally invested $2 million in HFN; (2) he could engage customers on an instantaneous basis; (3) suitable real estate was available for purchase as HFN's headquarters; (4) he could obtain $30 million from the State of New Jersey to support the HFN venture; and (5) leaders of several religious organizations were prepared to steer their congregants towards HFN. See Am. Compl. ¶¶ 38-40. These allegations as to Richards' representations, if taken as true, establish the first three elements necessary to plead fraud with particularity, i.e., that the plaintiff (1) specify the statements he contends were fraudulent; (2) identify the speaker; and (3) state where and when the statements were made. See Anatian, 193 F.3d at 88. Moreover, these statements are separate and distinct from the alleged breach of contract,[9] *viz.*, that

---

[9] Defendants contend that some of the statements plaintiff claims were fraudulent relate to the performance of the LOI, such as Richards' alleged representations concerning components of HFN that were in place prior to plaintiff's investment. See Def. Reply Mem. at 6. As previously noted, however, defendants failed to include the LOI in their submissions to the Court, and the Court need not consider that document in ruling on a Rule 12(b)(6) motion to dismiss. See *supra* at 9 n.6. In any event, as the validity and terms of the contract cannot now be determined, defendants' argument is premature.

Richards and Stage C failed to refund plaintiff's investment upon request.

Defendants additionally maintain that some of the alleged misrepresentations are mere "salesmanship aimed at raising potential-investor confidence[,]" and that such statements cannot, as a matter of law, "form the basis of a proper fraud claim." Def. Reply Mem. at 6. Defendants are correct that, under New York law, a fraud claim cannot be based upon puffery or opinions as to future events. See Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing Quasha v. Am. Natural Beverage Corp., 567 N.Y.S.2d 257, 257 (1st Dep't 1991)). However, "a relatively concrete representation as to a company's future performance, if made at a time when the speaker knows that the represented level of performance cannot be achieved, may ground a claim of fraud." Id. (citations omitted). The statements plaintiff claims to be fraudulent may well prove too speculative to be actionable. At this stage in the litigation, however, the Court is obligated to "accept as true all material facts alleged in . . . plaintiff's complaint and draw all reasonable inferences in his favor." McEvoy v. Spencer, 124 F.3d 92, 95 (2d Cir. 1997) (citation omitted). For that reason, the Court declines defendants' invitation to construe the allegedly fraudulent statements as mere puffery.

Finally, for the first time in their reply submission, defendants argue that plaintiff has failed to plead with specificity why the alleged misrepresentations were fraudulent. See Def. Reply Mem. at 4; but see Tr. at 14 (defense counsel concedes that defendants are not challenging the fraud count as inadequately pled). On this score, defendants are correct. Plaintiff merely states that "[u]pon information and belief, each of the material representations

and/or omissions set forth above were false and known to be false, and/or were recklessly made by Defendants Richards and Stage C." Am. Compl. ¶ 41. This "blanket allegation of falsity . . . is simply too conclusory." See Global Energy & Mgmt., LLC v. Xenathol Corp., No. 07 Civ. 11049 (NRB), 2009 WL 464449, at *3 (S.D.N.Y. Feb. 24, 2009) (citations omitted). See also San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 813 (2d Cir. 1996) ("Since plaintiffs have not alleged circumstances indicating that any of the statements identified in the Complaint were false, the plaintiffs have failed to adequately plead fraud.") (citing Acito v. IMCERA Group, Inc., 47 F.3d 47, 53 (2d Cir. 1995)). Moreover, courts are precluded from considering allegations made "upon information and belief" in determining whether a fraud claim has been pled with specificity, unless the allegations speak to facts peculiarly within the knowledge of the opposing party; even then, the pleading party must "provide a statement of facts upon which the belief is founded." See Campaniello Imps., Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997) (citing Luce, 802 F.2d at 54 n.1). Here, plaintiff's pleading fails to provide any such specification. Simply put, even though some of the above-described representations might be actionably false, the First Amended Complaint does not disclose in what respect those representations were untrue.[10] For that reason, plaintiff has failed to satisfy the heightened

---

[10] There is one exception: Plaintiff has alleged that Richards represented, "on several occasions[,] that certain real estate near Scranton, Pennsylvania was available to obtain for use as office space in the HFN venture." Am. Compl. ¶ 39. Plaintiff claims that this statement was false because, "[i]n reality, the [above-described] property was located in a remote location and was wholly unsuitable for use in the venture." Id. As to this statement, the

(continued…)

pleading requirements of Rule 9(b).

Accordingly, this Court recommends that defendants' motion to dismiss Count IV, fraudulent inducement, be granted without prejudice and, for the reasons stated below, that plaintiff be granted leave to amend his complaint.

**V. Leave to Amend**

In the event defendants' motion to dismiss is granted with respect to plaintiff's fraudulent inducement claim, plaintiff requests leave to amend. See Pl. Mem. Opp. at 7 n.1. For the reasons that follow, this Court respectfully recommends that plaintiff be granted leave to amend, including but not limited to his fraudulent inducement claim.

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, where, as here, an amended pleading has already been filed, a plaintiff may further amend his complaint "only with the opposing party's written consent or the court's leave[,]" which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendments are favored because they "tend to facilitate a proper decision on the merits." Sokolski v. Trans Union Corp., 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks and citations omitted). See also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) ("[M]ere technicalities should not prevent cases from being decided on the merits[.]") (citing Foman v. Davis, 371 U.S. 178, 181-82 (1962); Conley v. Gibson, 355 U.S. 41, 47-48 (1957)).

Whether to grant leave to amend is committed to the discretion of the district court,

---

[10](...continued)
pleading requirements of Rule 9(b) have been satisfied.

which "'is not subject to review on appeal except for abuse of discretion[.]'" Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) (quoting 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.08[4], at 15-64 (2d ed. 1992)). The district court's discretion, however, is not unlimited: Under Rule 15, a motion for leave to amend should be denied only where there is "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility[.]" Monahan, 214 F.3d at 283 (citing Foman, 371 U.S. at 182)). The non-moving party bears the burden of establishing why leave to amend should not be granted. See Sokolski, 178 F.R.D. at 396 (citation omitted); see also Helft v. Allmerica Fin. Life Ins. & Annuity Co., No. 1:03-CV-35, 2006 WL 839528, at *8 (N.D.N.Y. Mar. 24, 2006) ("Defendants . . . have failed to come forth with specific evidence, as is their burden, demonstrating that plaintiffs are acting in bad faith, have unduly delayed these proceedings, or that they would be prejudiced by the filing of a second amended complaint.").

Other than a blanket assertion that plaintiff's request for leave to amend "is improper and should be disallowed[,]" Def. Reply Mem. at 7, defendants offer few, if any, arguments in opposition to plaintiff's request for leave to amend, and have therefore failed to meet their burden of establishing why plaintiff's request for leave to amend should not be granted. Suffice it to say, because the Court has not yet held an initial conference or entered a Rule 16(b) order scheduling discovery in this case,[11] there will be no prejudice to defendants if

---

[11] At the initial conference in all its civil cases, it is the usual practice of this Court to provide
(continued…)

-18-

plaintiff is permitted to further amend his complaint, because defendants will not incur any additional costs nor will the resolution of this case be significantly delayed. See Monahan, 214 F.3d at 284 ("In determining what constitutes prejudice, we generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute . . . .") (internal quotation marks and citation omitted). Cf. Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000) ("By limiting the time for amendments, [Rule 16(b)] is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed.") (internal quotation marks and citations omitted). Moreover, there is no indication that plaintiff has acted in bad faith in seeking leave to amend; indeed, defendants have raised new arguments since the complaint was first amended.[12]

Accordingly, it is the recommendation of this Court that plaintiff be granted leave to file a Second Amended Complaint to cure the deficiencies identified in this opinion.

---

[11](…continued)
the parties a reasonable period of time for amending pleadings and joining additional parties as of right.

[12] See *supra* p. 15. Given defendant's prior disclaimer of any Rule 9(b) challenge to the fraudulent inducement claim, see Tr. at 14, and Judge Mauskopf's observation that the fraud claim included "a lot of specificity," id. at 15, it is entirely understandable that plaintiff failed to add greater specificity to that claim in his Amended Complaint.

## CONCLUSION

For all of the foregoing reasons, this Court respectfully recommends that defendants' motion to dismiss be denied in part and granted in part without prejudice, and that plaintiff be granted leave to file a Second Amended Complaint within a short period of time.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Roslynn R. Mauskopf on or before July 6, 2009. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system.

    **SO ORDERED.**

**Dated:**     **Brooklyn, New York**
            **June 22, 2009**

                                **ROANNE L. MANN**
                                **UNITED STATES MAGISTRATE JUDGE**